MATILDA P. COWLES, Respondent, *v.* COWLES REALTY COMPANY and Others, Appellants.

First Department, June 2, 1922.

Corporations — by-laws — action by legatee of stockholder to have declared void attempted repeal of by-law unanimously adopted providing that no stockholder could dispose of stock, except by will, without offering it to corporation — by-law to be printed on certificate — certificates surrendered and new certificates issued with by-law thereon — by-law constituted contract — plaintiff entitled to injunction pendente lite restraining enforcement of attempted repeal of by-law.

A by-law of a corporation, adopted by the unanimous vote of stockholders holding all the stock, to the effect that no stockholder should have the right or power to pledge, sell or otherwise dispose of, except by will, any share or shares of the capital stock of the corporation without first offering the said share or shares of stock for sale to the company at the price per share at which it is proposed to sell the stock or at par in case it was proposed to pledge or otherwise dispose of same, except by will, and which provided also that the provisions of the by-law should be binding on any executor, administrator or other legal representative of the stockholders, and that the provisions contained in the by-law should be placed upon each certificate of stock already issued or which was thereafter issued and thereupon should be a part thereof, binding upon each present and future owner of the stock, constitutes a binding contract between the members of the corporation and the corporation itself.

Said contract is founded upon a sufficient consideration, the consideration being the change of position of each and every stockholder by reason of their several agreements to accept the terms of the by-law and to surrender all outstanding certificates of stock and to accept in place thereof stock certificates with the terms of said by-law in question printed or indorsed upon the face thereof.

The resolution providing for the by-law constituted an executory contract which became binding upon the company and the stockholders when they surrendered their stock and accepted new certificates burdened with the said by-law printed thereon.

Accordingly, in an action brought by a legatee of one of the original stockholders to have declared illegal and void an attempted repeal by a majority of the stockholders of said by-law, an injunction *pendente lite* was properly granted, restraining the defendants from doing any act in furtherance of the repeal of said by-law or with reference to their holdings of stock in the defendant corporation, save to surrender the certificates of stock which they had received unindorsed and unburdened by the provisions contained in the by-law in question and receive in place thereof new certificates of stock in conformity with such by-law.

PAGE, J., dissents.

APPEAL by the defendants, Cowles Realty Company and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of February, 1922, granting plaintiff's motion for an injunction *pendente lite.*

*Shattuck, Glenn & Ganter* [*Garrard Glenn* of counsel; *DeWitt C. Jones, Jr.,* with him on the brief], for the appellants.

*Shearn & Hare* [*Montgomery Hare* of counsel], for the respondent.

MERRELL, J.:

The action is brought by the plaintiff to have declared illegal and void an attempted repeal by a majority of the stockholders of the defendant Cowles Realty Company of a by-law, being section 5 of article V of the by-laws of said company, which provided that no stockholder of the defendant company should have the right or power to pledge, sell or otherwise dispose of any shares of stock of said company, except by last will and testament, without first offering the same for sale to the defendant company at the actual price at which it was proposed to sell such stock, or at par in case it was proposed to pledge or otherwise dispose of the same, except, as aforesaid, by last will and testament.

At Special Term the court granted an injunction *pendente lite* enjoining the defendants and all other officers, directors and agents of the defendant company during the pendency of the action from aiding and abetting in the enforcement of or attempting to carry out the provision of a resolution adopted at a special meeting of the stockholders of the defendant company, held on September

**462**     COWLES v. COWLES REALTY CO.

**First Department, June, 1922.**     [Vol. 201

9, 1921, which purported to repeal said section 5 of article V of said by-laws of the defendant company, and restraining and enjoining the said defendants from retiring any of the certificates of stock of said company issued pursuant to the terms of section 5 of article V of said by-laws, which certificates have printed on the face thereof the provisions of said by-law. And the order appealed from further restrained and enjoined any of the stockholders of the defendant company who had already surrendered their stock certificates bearing on the face thereof the provisions of said by-law and who had received in place thereof stock certificates of the defendant company without the provisions of said by-law printed thereon, from assigning, selling or otherwise parting with any of said stock certificates not having printed thereon the provisions of said by-law, except to surrender the same to the officers or agents of the defendant company for cancellation in order to receive in their place stock certificates of the company with the provisions of said by-law printed or indorsed thereon, and which order further restrained the said defendants *pendente lite* from taking any proceedings whatsoever under and pursuant to or by virtue of the provisions of said resolution of September 9, 1921, purporting to repeal said section 5 of article V of the by-laws of said company.

The defendant company was organized on or about December 10, 1909, for the purpose of taking and holding certain real property situated in the village of Rye, Westchester county, N. Y., and also certain bonds and stocks, all owned by one Sarah B. Cowles in her lifetime, and which property was bequeathed by her last will and testament to her three sons, David S. Cowles, Charles P. Cowles and the defendant Justus A. B. Cowles. The defendant company was organized with 450 shares of stock, of the par value of $100 per share. This stock was equally divided among said three sons of Sarah B. Cowles, each owning and receiving 150 shares thereof. David S. Cowles died November 6, 1911, leaving a last will and testament wherein he devised and bequeathed to the plaintiff, Matilda P. Cowles, the 150 shares of the stock held by him in the defendant company, and the plaintiff is now the owner and holder thereof. Charles P. Cowles also died subsequent to the formation of said corporation, and the defendant Justus A. B. Cowles has succeeded to his interest in the defendant company and has become the owner of the shares of stock therein originally held by said Charles P. Cowles in his lifetime. The assets of the defendant company consist, as aforesaid, of improved and unimproved real estate in the village of Rye, Westchester county, N. Y., and also of bonds secured by mortgages on real property, and of high-grade stocks and bonds of a total value of upwards of $600,000,

with estimated liabilities thereon of $60,000. The stock of the defendant company is worth approximately $1,200 per share.

After the formation of said corporation there was a meeting of the three members each owning 150 shares of the capital stock thereof, and at such meeting there was adopted by unanimous vote of the three stockholders the by-law in question, being section 5 of article V of the by-laws of the defendant company. The by-law thus adopted provides as follows:

" Sec. 5. No stockholder shall have the right or power to pledge, sell or otherwise dispose of, except by Will, any share or shares of the capital stock of this Company, without first offering the said share or shares of stock for sale to the Company, at the actual price per share at which it is proposed to sell such share or shares of stock, or, at par, in case it is proposed to pledge or otherwise dispose of the same, except by Will. Such offer shall be made in writing, signed by such stockholder and sent by mail to the Company in a post-paid wrapper to the post-office address of the Company, at its principal place of business, and such offer shall remain good for acceptance by the Company for the period of thirty (30) days from the date of mailing such notice.

" These provisions shall be binding also upon any executor, administrator or other legal representative of every stockholder, in case of the sale or pledging of any share or shares of stock by such executors, administrators or other legal representatives of any stockholder and the provisions contained in this by-law shall be embodied in, written, printed, or stamped upon each certificate of stock already issued or which hereafter may be issued and thereupon shall be a part thereof binding upon each and every present or future owner or holder thereof, whether such stock be acquired by Will or otherwise."

As before stated, on September 9, 1921, an attempt was made to repeal said by-law, the said Justus A. B. Cowles, the owner of the majority of the capital stock of said company, voting in favor of the repeal thereof, while the plaintiff voted against such repeal and protested against the adoption of the resolution to that end.

It is the contention of the plaintiff, respondent, that the adoption of the by-law in question, section 5 of article V of the defendant company's by-laws, was in effect a contract between the three sons each owning 150 shares of the capital stock of said company; that said by-law was adopted upon due consideration, each of the parties thereto, by voting in favor thereof, changing his position with reference to his stock holdings.

It is the contention, on the other hand, of the defendants, appel-

lants, that by a majority vote the repeal of said by-law was legal and proper, and that said by-law did not have any binding effect as a contract between the parties.

It seems to me that the plaintiff is right in her contention, and that at common law she had certain contract rights which she received from her husband with reference to her said stock, namely, that when any of the stock of the other stockholders of the company, as well as of herself, should be offered for sale, it must be first offered to the company and an opportunity given to the defendant company to acquire such stock at the price at which it was proposed to sell the same. The decisions of the courts seem to be in accord with plaintiff's contention. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Parish* v. *New York Produce Exchange,* 169 id. 34.) These two cases seem to be closely in point and to sustain the position of the respondent in the case at bar. In *Parish* v. *New York Produce Exchange (supra),* Chief Judge PARKER, writing for a unanimous Court of Appeals, referring to the earlier decision of that court in *Kent* v. *Quicksilver Mining Co. (supra),* at page 46, said: " The trend of authority in this State is, however, in the other direction, and first found expression in this court in the well-known case of *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 159). In that case the corporation was created by special act of the Legislature, and the act provided, among other things relating to the by-laws, that the company should have power ' to alter, amend, add to or repeal at their pleasure, provided that such by-laws shall not be contrary to the Constitution of this State, or the provisions of this act, * * * and to issue certificates of stock representing the value of their property in such form and subject to such regulations as they may, from time to time, by their by-laws prescribe.' The by-laws enacted pursuant to the authority thus conferred directed the capital stock to be divided into equal shares and issued, all of which was done. But subsequently, by vote of the stockholders holding a majority of the capital stock, the by-laws were so amended as to authorize the issuing of an equal number of shares of preferred stock for common stock returned to the company with a cash payment of $5 on each share, all preferred stock to be entitled to interest at 7% per annum, to be paid out of the net profits of the company, the surplus earnings after such payment to be divided *pro rata* among the holders of the preferred and common stock. A large number subscribed and paid the sum prescribed, which went into the assets of the company. Some four years later a holder of common stock brought an action to restrain payments to preferred stockholders from the profits of the company, and when the action

came before this court the opinion conceded that under its charter the corporation might have provided in the first instance by its by-laws for a division of its shares into common and preferred, but that instead it duly made a by-law dividing its capital stock into equal shares, and directing the issue of certificates of stock therefor. To the contention made that the charter expressly conferred the power to alter, amend and repeal the by-laws, and, hence, that the subsequent amendment was authorized and the action taken thereunder binding, the court made answer: ' There is a power in this charter to alter, amend, add to or repeal, at pleasure, by-laws before made. It is argued from this that it was in the power of the corporate body, in due form and manner, to alter the by-law which had fixed the amount of the capital stock and the number and relative value of the shares thereof. The power to make by-laws is to make such as are not inconsistent with the Constitution and the law; and the power to alter has the same limit, *so that no alteration could be made which would infringe a right already given and secured by the contract of the corporation.* Nor was the power to alter, to the extent of affecting the contracted relative value of a share, reserved when the share was sold to the stockholder, so as to enter into and form a part of the contract. An alteration is a *pro tanto* repeal; but no private corporation can repeal a by-law so as to impair rights which have been given and become vested by virtue of the by-law afterwards repealed. All by-laws must be reasonable and consistent with the general principles of the laws of the land, which are to be determined by the courts, when a case is properly before them. (*The Master, etc.,* v. *Green,* 1 Ld. Raym. 113.) A by-law may regulate or modify the constitution of a corporation, but cannot alter it. [*Rex* v. *Cutbush,* 4 Burr. 2204; *Railway Co.* v. *Allerton,* 18 Wall. 233.] The alteration of a by-law is but the making of another upon the same matter. If the first must be reasonable and in accord with the principles of law so must that which alters it. *If then the power is reserved to alter, amend or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws, agreeable to law. But a by-law that will disturb a vested right is not such.* (See *Gray* v. *Portland Bank,* 3 Mass. 364; Grant on Corps. 91.) And it differs not when the power to make and alter by-laws is expressly given to a majority of the stockholders and that the obnoxious ordinance is passed in due form.' " (Italics are the writer's.)

The contract effected by the adoption of the unanimous resolution of the stockholders in the case at bar was upon sufficient con-

First Department, June, 1922.                [Vol. 201

sideration, the consideration being the change of position of each and every stockholder by reason of their several agreements to accept the terms of said by-law and to surrender all outstanding certificates of stock and to accept in place thereof stock certificates with the terms of said by-law in question printed or indorsed upon the face thereof. The change of position of each stockholder in agreeing to accept certificates of stock so indorsed and thus burdened, thus releasing vested rights with relation to the control of his stock, bound the stockholder to carry out the same to his detriment. The consideration between the stockholders was mutual. Moreover, in carrying out such by-law the stock held by the various stockholders would be enhanced in value, as clearly the purchase by the corporation of outstanding stock would increase the value of the remaining shares and also the voting power thereunder. Plaintiff's testator voted with all the other stockholders in favor of the by-law of the defendant company and the resolution providing for such by-law constituted an executory contract which became binding upon the company and upon the stockholders when they surrendered their stock and accepted new certificates burdened with the said by-law printed thereon.

Prior to November 30, 1910, the three brothers, each owning 150 shares of the capital stock of the defendant company, were free to dispose of their stock holdings at will. By the resolution adopted on November 30, 1910, each voted in favor of the resolution adopting the by-law in question, and thereafter surrendered his stock certificates and received in place thereof new certificates with the provisions of the by-law incorporated thereon. Each and every stockholder then made a new and enforcible contract with the corporation and with his fellows. By his vote and agreement he changed his position by surrendering his right to sell his stock to whom and upon such terms as he might wish. He bound himself by the limitation that he would not sell his stock, save to the defendant under the provisions of said by-law. He thereby limited his rights as they had theretofore existed, and in return therefor became vested with a right to insist that the corporation and his fellow-stockholders should also abide by the provisions of the by-law. It is to protect such contract and to insure its enforcement that the plaintiff brings the present action. I think she has clear and substantial rights in the premises. These rights she received from her husband through his will, as permitted by the terms of the by-law itself. She stands in the same position with reference thereto that her deceased husband occupied in his lifetime. I think the court very properly granted an injunction *pendente lite* restraining the defendants from doing

any act in furtherance of the repeal of said by-law or with reference to their holdings of stock in the defendant corporation, save to surrender the certificates of stock which they have received unindorsed and unburdened by the provisions contained in the by-law in question and to receive in place thereof new certificates of stock in conformity with such by-law. The order appealed from merely grants an injunction during the pendency of the action. I think that, at least, the plaintiff is entitled, until the action is tried and determined, to the restraining order which has been granted.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

Clarke, P. J., and Dowling, J., concur; Laughlin, J., concurs in result; Page, J., dissents.

Order affirmed, with ten dollars costs and disbursements.